**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2009

Charles R. Fulbruge III
Clerk

No. 08-60916

JAMES WARREN

Plaintiff - Appellant

v.

CITY OF TUPELO MISSISSIPPI

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi, Eastern Division
No. 1:07-CV-70

Before KING, GARWOOD, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant James Warren, an electrical worker in the city of Tupelo, Mississippi, was not promoted to the position of Foreman in the Tupelo Water & Light Department. Dwayne Daniel and Bill West were chosen even though they did not have the ten years of lineman experience listed in the job description. Warren had such experience, though he had not actively done such work since 1995 and lacked other qualifications. Warren timely filed a charge with the United States Equal Employment Opportunity Commission, alleging

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that he was denied the promotion because of his age. The Commission issued a Notice of Right to Sue, and Warren subsequently filed suit in the United States District Court for the Northern District of Mississippi, alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The district court granted summary judgment in favor of the city, ruling that Warren had failed to show a prima facie case of age discrimination. In the alternative, it also ruled that Warren did not create an issue of material fact in rebutting the legitimate, nondiscriminatory reasons that the city advanced for its hiring decision. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

In 1968, plaintiff-appellant James Warren joined the Tupelo Water & Light Department (the "department") in Tupelo, Mississippi ("the city"). After working for several years, he began doing "lineman" work—climbing electric poles, working in the air off of poles, and working out of a bucket truck. In 1995, Warren switched to working on the operations service truck and no longer primarily did lineman work, though he still did such work while "on call" five to ten times per year. When attending to line problems on call, Warren never needed the assistance of a Foreman or lineman. Warren was never classified as "Lead Lineman," was not aware of this category, and always thought of himself as a "top lineman."[1]

---

[1] Though Warren sometimes describes the "Foreman" position as "lead lineman/foreman," we will refer to it as "Foreman." The level below that is "Lead Lineman," the level below that is "Lineman II" (the highest level that Warren attained), and the lowest level is "Lineman I." Additionally, we agree with the district court that Warren's argument—that the "Lead Lineman" title is a distinction without a difference—"does not negate the qualification" and that "[t]he consistent deposition testimony of other Tupelo employees show[s] that lead lineman is a step above Warren's terminus on the lineman career path." *Warren v. City of Tupelo, Miss.*, No. 1:07-CV-70, 2008 WL 4450291, at *2 (N.D. Miss. Sept. 29, 2008).

In April 2006, the department posted openings for two Foreman positions. Johnny Timmons, the department's manager, considered the applications of six applicants: Warren (age 61), Chad Cobb (age 33), Britt Curbow (age 33), Dwayne Daniel (age 36), Joseph Edwards (age 42), and Bill West (age 31). As part of the evaluation process, Timmons asked Ricky Loden (electrical superintendent), Alvin Jones (Foreman) and Gary Hatfield (Foreman) to evaluate each of the six applicants using "interview rating forms." Each of these three separately evaluated the applicants, without interviews, and based on his knowledge of each applicant's work history. The three evaluators filled out ratings on a scale from 1 to 10 in the categories of: appearance, poise and confidence, verbal communication and skills, comprehension, public and employee relations, ability to present ideas, job knowledge and skills, work expectations, and a general rating of the "candidate's overall ability to fulfill the position being sought." Spencer Gunn, a Foreman, was not asked to fill out any evaluation forms regarding Warren's promotion, even though he was familiar with Warren's work and "thought highly" of him.[2]

In a personal meeting, Warren pointed out to Timmons that Daniel and West did not have the requisite ten-year experience for a "general lineman." In response, Warren threw the rating forms down on the table and said, "what do you want me to do, kick them off the list?" Warren later learned from Cassandra Moore and Contanna Purnell of the city's human resources department that Timmons and his secretary had attempted to have the ten-year requirement removed from the Foreman job listing.

---

[2] The parties dispute whether Timmons had previously used this rating system. Timmons told Warren that this rating system had been used in 2004 to promote Gunn to the Foreman position. However, neither Hatfield nor Loden recall being asked to use such a system before. Gunn stated that if he had been rated, no one ever told him about it. Members of the city's human resources department also do not recall such a rating system being used.

The three evaluators rated Warren lower than other candidates.  For example, Loden stated that Warren lacked knowledge and experience working on power lines, doing "hot work" (i.e., working on energized lines), and doing transformer banking.  Jones noted that Warren had worked on a service truck for most of the twenty-two years that Jones had been with the department, whereas other candidates were working with crews daily.  Hatfield was also aware that Warren was not working on a line crew but instead had been operating in the operations serviceman job for many years.

Timmons interviewed three candidates—Britt Curbow, Dwayne Daniel, and Bill West—but did not interview Warren.  Timmons promoted Daniel and West on May 15, 2006.  Timmons believed that Daniel and West had the requisite experience and knowledge of electrical systems and electrical work, such as transformer banking, primary metering, and setting poles.  Daniel had risen from Lineman I to Lineman II and finally to Lead Lineman in seven years, and had been working on a line crew for five years before that. West had worked on a line crew since 1992, and also moved from Lineman I to Lineman II and then to Lead Lineman.  Warren, by contrast, had never applied to be promoted from Lineman II to Lead Lineman.  He had been working as an operations serviceman since October 1995 and, though still at the lineman level, had not worked on a day-to-day basis with a crew since 1995 and was only performing line work "on call."

Warren later questioned Timmons about the qualifications listed on the job posting.  Warren stated that he was the only candidate with a minimum of ten years of experience as a lineman.  Timmons agreed with this, but also noted that the job descriptions were optional and that there were other criteria for the job, such as having the necessary "Class A Commercial Driver's License" and prior experience as a Lead Lineman.

Finally, Warren puts forward many facts regarding the ratings system that allegedly demonstrate that he should not have been rated as low as he was. He notes that Hatfield rated him lower than West in the "verbal communication and skills" category because he knew of West's experience using "hot stuff" and did not know of Warren's experience in this category. Hatfield also stated that he "don't [sic] have no [sic] idea" why he rated Warren lower than West in the category of comprehension. Jones had "no idea" what Warren's experience was before 1987 and rated Warren a 3 out of 10 in "public and employee relations" because of alleged problems with other employees at some point in the distant past, though he did not know exactly what these problems were. Loden rated Warren lowly because he thought that Warren was not a good lineman and because generally Loden can "tell a guy by his actions whether he knows what he's doing or not," though he could not claim a single time where Warren behaved incorrectly when working on lines.

## B. Procedural background

Warren timely filed a charge with the United States Equal Employment Opportunity Commission (the "EEOC"), alleging that he was denied promotion because of his age. The EEOC issued a Notice of Right to Sue, and Warren subsequently filed suit in the United States District Court for the Northern District of Mississippi, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted the city's motion for summary judgment, ruling that Warren was unable to create an issue of material fact to make out a prima facie case of discrimination because he could not show that he was qualified for the position of Foreman. It noted that the listed job qualifications were amorphous and that none of the candidates met all of those listed. Nonetheless, it reasoned that Warren was never a Lead Lineman and that all of the Foremen had been promoted from that

5

level. It thus ruled that Warren's application failed because this rendered him unqualified.

In the alternative, the district court also ruled that Warren did not adequately create an issue of material fact to rebut the city's legitimate, nondiscriminatory reasons for not promoting him.[3] First, the court rejected Warren's reassertion of his qualifications because he did not meet all of the job requirements. Second, though the court acknowledged that the objectivity of the interview ratings forms was disputable, it ruled that there was "no evidence that the use of the process was designed to impermissibly discriminate against Warren or anyone else." *Warren*, 2008 WL 4450291, at *3. Third, the court ruled that the exclusion of Gunn from the hiring process, though possibly detrimental to Warren because Gunn thought highly of Warren, was likewise not evidence of discrimination. Finally, the court stated that Warren's argument that Timmons had earlier denied him a "right of way foreman" position was unavailing because Warren "offer[ed] nothing to show that the decision was due to age" and because Warren did not "indicate who else applied for the position." *Id.* at *4. Warren timely appealed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Brumfield v.*

---

[3] The district court did not specify the "multiple reasons" that the city gave, but instead focused only on the fact that Warren was not qualified because he had not been Lead Lineman.

*Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "All the facts and evidence must be taken in the light most favorable to the non-movant." *Breaux*, 562 F.3d at 364.

## III.  DISCUSSION

### A. The *McDonnell-Douglas* framework

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), the Supreme Court first established the overall three-step evidentiary framework for a court to evaluate discrimination claims.[4]  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089–90 (5th Cir. 1995).  Under this procedure, the complainant "carr[ies] the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas*, 411 U.S. at 802.  Once the complainant has done this, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*.  If the employer has articulated such a reason, then the complainant is given "a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext." *Id*. at 804.

---

[4]  The *McDonnell Douglas* case dealt with racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, not age discrimination under the ADEA. The Supreme Court has never "squarely addressed" whether this framework similarly applies to ADEA actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Nonetheless, the Court applied the framework to the ADEA in *Reeves*, stating that "[b]ecause the parties do not dispute the issue, we shall assume, *arguendo*, that the *McDonnell Douglas* framework is fully applicable here." *Id.* This court similarly "analyze[s] employment discrimination claims under a three-step, burden-shifting framework." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) (applying the three-step framework to an ADEA claim); *see also, e.g.*, *Lindsey v. Prive Corp.*, 987 F.2d 324, 326 (5th Cir. 1993) (same); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 638–39 & n.4 (5th Cir. 1985) (same).

The plaintiff always has the "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In light of this, a court may consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer[]." *Reeves*, 530 U.S. at 149. Since discrimination may be difficult to prove by direct evidence, "the strength of the circumstantial evidence supporting the plaintiff's prima facie case and showing the defendant's proffered reason is false may be enough to create an inference of discrimination." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 900 (5th Cir. 2000) (citing *Reeves*, 530 U.S. at 148–49, and *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)).

## B. Warren's claim of age discrimination under the ADEA

Warren first argues that the district court erred when it ruled that he did not create an issue of material fact regarding a prima facie case of age discrimination. For the purposes of the present case, we assume, *arguendo*, that Warren made a prima facie case of age discrimination.

At the second step of the *McDonnell* test, an employer's burden is satisfied "if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Bd. of Trs. of Keene State College v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) (internal quotation marks and alterations omitted). In the present case, the city satisfied its burden of providing a nondiscriminatory reason for not promoting Warren when it stated that "Warren was not a lead lineman" and that the city "chose[] candidates that were promoted sequentially through the ranks." *Warren*, 2008 WL 4450291, at *2.

The burden thus shifts to Warren to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. At

8

this stage, Warren first argues that he was qualified for the Foreman position. Second, he contends that the interview rating forms were used as a ruse in order to discriminate against him based on age. Third, he claims that the district court essentially used a "pretext plus" standard when considering his evidence rebutting the city's reasons.

In order to rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, "[i]t is not enough . . . to *dis* believe the employer." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993). Instead, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* In a promotion discrimination claim, a plaintiff may rebut a defendant's showing "by providing evidence that he was 'clearly better qualified' than the employee selected for the position at issue." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 357 (5th Cir. 2001) (quoting *Scott v. Univ. of Miss.*, 148 F.3d 493, 508 (5th Cir. 1998)). The question for the trier of fact thus becomes "whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination, and evidence of the plaintiff's superior qualification is thus probative of pretext." *Id.* Notably, "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* (quoting *Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Furthermore, an employer's "disregard of its own hiring system does not prove racial discrimination absent a showing that discrimination was a motive in the action taken." *See Sanchez v. Tex. Comm'n on Alcoholism*, 660 F.2d 658, 662 (5th Cir. 1981); *see also Lerma v. Bolger*, 689 F.2d 589, 592 (5th Cir. 1982). For example, in *Risher v. Aldridge*, a procurement agent alleged that the Air

9

Force committed sex discrimination when it failed to promote her. 889 F.2d 592, 594–95 (5th Cir. 1989). Risher alleged that the Air Force had failed to consider written performance appraisals required by the Air Force Personnel Manual and Civil Service Reform Act. *Id.* at 597. This court reasoned that "even if [the Air Force] did erroneously fail to 'use' the objective appraisals in his promotion decisions, there was absolutely no evidence presented that [it] did so in a sexually discriminating manner." *Id.*

First, Warren's assertion of his qualifications does not create a question of material fact that the city's reason for not hiring him was pretext. Even assuming that Warren is minimally qualified for the job under the first prong of the *McDonnell Douglas* framework, he does not meet the required burden of showing that he was "clearly better qualified" than Daniel and West. As the city notes in its brief, Warren was not working as a lineman day-to-day, but was only doing so "on call" about five to ten times a year. He also had never worked as a Lead Lineman and did not have the same up-to-date knowledge as Daniel and West, who were currently involved in line work. Thus, Warren's qualifications argument fails because the difference between his qualifications and those of Daniel and West were not "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Daniel and West] over [Warren] for the job in question." *Deines*, 164 F.3d at 280–81.

Second, Warren's argument about the "completely arbitrary and subjective" ratings forms is unavailing. It is true that there is some ambiguity regarding how the interview ratings form worked and whether Timmons even followed such objective criteria in making his decision. However, as in *Risher*, even if Timmons did not "use" the forms correctly or disregarded them, there was no evidence that he did so in a discriminatory manner with regard to age. In fact, Warren has not offered any evidence on rebuttal that age motivated how Timmons distributed the ratings forms or interpreted the results, nor how

10

Warren's age affected Gunn's exclusion from the ratings form process. Notably, in a deposition, Warren stated the following:

Q. Why do you believe that you were discriminated against on the basis of your age?

A. Well, I think that I was well qualified for the position. And it's apparent these two young guys got it. So if it wasn't that, what was it?

Q. But you don't—as you sit here today, you don't know their qualifications for the job?

A. No sir. But I know mine.

Q. The reason that you believe it was age was because two other guys younger than you got it?

A. Yes sir.

Q. Any other reason?

A. No sir.

(R. at 311.) Since this argument is unavailing, we conclude that "[Warren's] evidence to rebut the non-discriminatory reasons offered by [the city] is not so persuasive so as to support an inference that the real reason was discrimination." *See Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000); *see also Crawford*, 234 F.3d at 904.

Finally, Warren is incorrect in arguing that the district court essentially used a "pretext plus" standard in assessing his argument that the city's stated reasons were pretextual. He argues that the district court required "further, specific evidence that any discrimination that may have been involved was age discrimination" and that the court therefore contravened *Reeves*, which he states held that "the jury may find intentional age discrimination if it finds that the City's purported, 'legitimate, non-discriminatory reasons' for not promoting

11

Warren are not worthy of credence."[5]  This argument both misconstrues the district court's reasoning and the legal thrust of *Reeves*.  The district court in fact stated that "[d]eviation from normal hiring procedures does not conclusively establish improper discrimination or pretext" and that here "there [wa]s no evidence that the use of the process was designed to impermissibly discriminate against Warren or anyone else."  *Warren*, 2008 WL 4450291, at *3.  It was thus not holding Warren to a "pretext plus" standard, but was only adhering to this court's oft-articulated rule that evidence may founder when it "has no probative value with respect to the ultimate question before the jury of whether there was discrimination," in this case age discrimination.  *Vadie v. Miss. State Univ.*, 218 F.3d 365, 373 (5th Cir. 2000).  *Reeves* itself requires a plaintiff to "attempt to establish that he was the victim of *intentional discrimination*."  530 U.S. at 143 (emphasis added).  Warren has not done so here.

---

[5]  In his reply brief, Warren draws his main pretext standard from the Eleventh Circuit case *Jackson v. State of Alabama State Tenure Commission*, 405 F.3d 1276, 1289 (11th Cir. 2005), which states that a "district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id* (internal quotation marks omitted). This language is taken from a paragraph in *Burdine* in which the Supreme Court stated that a plaintiff must act "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S. at 256. Warren thus suggests that he has two options at the third step of the *McDonnell Douglas* test: either show intentional discrimination or disprove the city's reason for not promoting him. Warren contends that he has done both in this appeal. As explained above, he has not succeeded in showing the former option.

Furthermore, the second option is not available to Warren because both the Supreme Court and this circuit have rejected it as a misstated "inadvertence" in dicta. In *St. Mary's Honor Center*, the Court quoted the above language from *Burdine*, then stated that "the dictum . . . must be regarded as an inadvertence, to the extent that it describes disproof of the defendant's reason as a totally independent, rather than an auxiliary, means of proving unlawful intent."  509 U.S. at 517–18 (internal citations omitted).  This court has acknowledged the Supreme Court's rejection of the "unworthy of credence" statement. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 151 n.7 (5th Cir. 1995) ("As the Court made abundantly clear in *St. Mary's*, the employee at all times has the burden of proving, not only that the employer's stated reasons were false, but also that those reasons were a pretext for unlawful discrimination." (internal citation omitted)).

In sum, we conclude that Warren did not meet his "ultimate burden of persuading the trier of fact" that the city "intentionally discriminated against" him. *Burdine*, 450 U.S. at 253. Considering "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence" that supports the city, *Reeves*, 530 U.S. at 148–49, we affirm the district court's grant of summary judgment in favor of the city.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.