**Nary SMITH, Plaintiff–Appellant**

v.

**CITY OF ST. MARTINVILLE, Defendant–Appellee.**

No. 13–31233
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 17, 2014.

Ronald Lawrence Wilson, New Orleans, LA, for Plaintiff–Appellant.

Allan L. Durand, Durand Law Firm, Lafayette, LA, for Defendant–Appellee.

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM: *

Nary Smith appeals the district court's grant of summary judgment in favor of his former employer, the City of St. Martinville, on. his discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Finding no error, we AFFIRM.

## I.

Nary Smith, an African–American male resident of St. Landry Parish, Louisiana, was Assistant Chief of Police of the St. Martinville Police Department ("SMPD") until he was required to retire at the age of sixty-five pursuant to the City's mandatory retirement policy. Smith joined the SMPD as a patrol officer in 1977, and advanced with the police department to patrolman first class, then to sergeant, and finally to Assistant Chief of Police in 1981. Smith also served as interim police chief several times during his career. As Assistant Chief of Police, Smith was employed as a police officer, and his position involved all the traditional law enforcement duties, including wielding a gun, patrolling the City, and enforcing the law.

Since 1977, the City of St. Martinville has had in place an ordinance requiring mandatory retirement for police officers at the age of 65. That policy, codified at section 16.5–41 of the St. Martinville City Code of Ordinances, provides: "Mandatory retirement for police. Any employee of the municipality's police department who has attained the age of sixty-five (65) years shall be separated from the department by the appointing authority." The City explained that it believed the policy is reasonably necessary for the performance of the job of a police officer, which requires officers to arrest and physically subdue violators, because at age sixty-five, most officers are unable to undergo the physical stresses and demands required of the position.

On February 7, 2011, Smith received a letter from the Mayor of St. Martinville, Thomas Nelson, stating, "[s]ince you will reach the age of 65 on 2–27–11, your employment will terminate on that date." The letter cited section 16.5–41 of the St. Martinville City Code of Ordinances. Smith was terminated pursuant to this policy on February 27, 2011.

At the time Smith was required to resign, three employees of the St. Martinville police department maintained employment beyond the age of sixty-five. Theresa Thierry, an African–American female, attained the age of sixty-five on August 24, 2008, while working as a full-time dispatcher. She remained employed until she retired on November 18, 2008. Artie Roy, a Caucasian male, was hired by the city of St. Martinville Police Department in September 2008 at the age of sixty-six as a part-time radio dispatcher, and he now serves as a school crossing guard. Roy was previously a police officer until 1993. He was authorized to carry a weapon as a police officer but not as a radio dispatcher

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

or school crossing guard. George Resweber, a Caucasian male, was hired by the St. Martinville Police Department in September of 2007 as a part-time school-crossing guard at the age of sixty-four and was not terminated when he reached age sixty-five. Resweber had also previously served as a police officer until he resigned in 2005 and became a crossing guard. He was not authorized to carry a weapon as a school crossing guard.

During a St. Martinville City Council meeting in February of 2011, Smith informed the council members and Mayor Nelson that there were currently individuals employed with the police department who were age sixty-five or older. Mayor Nelson averred that until this was brought to their attention, no one in City government was aware that these employees were over the age of sixty-five. He further averred that none of those three employees performed police functions. Following the City Council meeting, on June 6, 2011, the City created a new department, the Department of School Crossing Guards, independent of the SMPD. Roy and Resweber were transferred to this new department rather than being terminated.

Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination. The EEOC issued Smith a Notice of Right to Sue under the ADEA on March 22, 2012. On March 23, 2012, Smith filed his complaint alleging that the City of St. Martinville terminated his employment based on his age in violation the ADEA. Smith then filed a complaint with the EEOC alleging race and sex discrimination in violation of Title VII. On May 22, 2012, the EEOC issued Smith a Notice of Right to Sue to bring a claim under Title VII. Subsequently, on August 19, 2012, Smith moved in the district court to file an amended complaint. The district court granted the motion, and Smith filed an amended complaint alleging that the City of St. Martinville discriminated against him on the basis of his race and sex.

The City of St. Martinville filed a motion for summary judgment, which the district court granted. Smith timely appealed.[1]

## II.

We review orders granting summary judgment *de novo*, applying the same standard applicable in the district court. *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 355 (5th Cir.2012); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir.2004). Summary judgment is proper if the movant shows, with reference to specific facts, that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a); *see id.* R. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, in assessing whether summary judgment is appropriate in a particular case, "all justifiable inferences to be drawn from the underlying facts must be viewed in light most favorable to the nonmoving party." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir.2012); *see also, e.g., Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.") (citing *Scott v. Harris*, 550 U.S.

---

[1]. The City does not dispute on appeal that Smith timely filed his complaint and timely exhausted his administrative remedies as required by Title VII. *See* 42 U.S.C. § 2000e–

5(e)(1), (f)(1); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quotation marks omitted)).

### III.

Smith challenges the district court's order granting summary judgment to the City of St. Martinville on his Title VII claims of race and sex discrimination. Smith acknowledges that his age-discrimination claim is foreclosed by 29 U.S.C. § 623(j), which exempts law-enforcement agencies and fire departments from the ADEA's prohibition on discrimination based on age.[2] Accordingly, Smith now concedes that St. Martinville's mandatory retirement policy is valid and applies to him in accordance with § 623(j). Instead, Smith argues that the City applied its mandatory retirement policy in a manner that discriminated against him due to his race and sex in violation of Title VII. Smith contends that the City applied its mandatory-retirement policy in a discriminatory manner by enforcing the policy with regard to him, an African–American male, but allowing an African–American female and two Caucasian males to continue working beyond the age of sixty-five. We therefore pretermit discussion of Smith's ADEA claim except to the extent that it is relevant to his Title VII claim.

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). An employer's action is unlawful if race or sex was "a motivating factor" for terminating an employee, even if the employer was also motivated by other lawful factors. *Id.* § 2000e–2(m). A plaintiff "may prove a claim of intentional discrimination ... either by direct or circumstantial evidence." *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir.2007).

In adjudicating Title VII claims of race or sex discrimination where there is "[no] direct evidence of discrimination based on race," *Byers v. Dall. Morning News, Inc.,* 209 F.3d 419, 425 (5th Cir.2000), we apply the modified burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see, e.g., Vaughn v. Woodforest Bank,* 665 F.3d 632, 636 (5th Cir.2011); *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir.2003); *Risher v. Aldridge,* 889 F.2d 592, 596 & n. 11 (5th Cir.1989).

Under this framework, a plaintiff first must raise a genuine issue of material fact as to each element of a prima facie case. *Johnson,* 351 F.3d at 621. To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably ... than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S. R.R.,* 574 F.3d 253, 259 (5th Cir.2009) (citing

---

2. The ADEA provides that an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623. Section 623(j) provides that "[i]t shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken with respect to the employment of an individual as a firefighter or as a law enforcement officer."

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

Second, if the plaintiff presents a prima facie case, the burden shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see Johnson,* 351 F.3d at 621.

Third, if the defendant makes the requisite showing, the burden shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact either (1) that the proffered reason is "false or unworthy of credence," *Vaughn,* 665 F.3d at 636, or is merely "pretext for discrimination," *Johnson,* 351 F.3d at 621; *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), or (2) that the reason, "while true, is only one of the reasons for [the employer's] conduct, and another 'motivating factor' " is the plaintiff's race or sex, *Johnson,* 351 F.3d at 622 (citations omitted); *see Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (holding that in Title VII cases, the mixed-motives theory of discrimination is available in cases with circumstantial evidence of discrimination). Bare allegations of race or sex discrimination, without more, are insufficient to create a genuine dispute as to a material fact. *See Giles v. City of Dallas,* 539 Fed.Appx. 537, 545 (5th Cir.2013) (per curiam); *Byers,* 209 F.3d at 426–27.

### A.

First, we consider whether Smith raises a genuine issue of material fact on the elements of a prima facie case. *See Johnson,* 351 F.3d at 621. The City of St. Martinville acknowledges that Smith is a member of a protected class and was the subject of an adverse employment action. The City also does not dispute that, at the time Smith was required to retire from the police force due to his age, the City allowed three police department employees to remain on the force notwithstanding the fact that they were over the age of sixty-five.

■ The City argues, first, that Smith was unqualified for the position because Smith reached the age of sixty-five and was therefore subject to St. Martinville's mandatory-retirement policy, which is permissible per ADEA § 623(j). However, Smith claims that the mandatory-retirement policy itself was applied in a discriminatory manner. This Court has held that, in determining whether a plaintiff is qualified for a position, the court must "[consider] whether the requirements were equally applied" to all employees. *Johnson,* 351 F.3d at 624. That is, where an employer declines to apply a particular objective employment requirement equally to all members of a group, a plaintiff's failure to meet that requirement does not render him "unqualified." *See id.* at 620–21, 623–24 (holding that it was error to require the plaintiffs to show that they were qualified for a position notwithstanding their failure to satisfy certain objective hiring requirements at the prima facie stage "without considering whether the requirements were equally applied to the employees actually hired") (citing *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 680 (5th Cir.2001), *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.,* 275 F.3d 1014, 1020 (11th Cir.2001), and *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 643–45 (11th Cir. 1998)); *see also, e.g., Warren v. City of Tupelo Miss.,* 332 Fed.Appx. 176, 182 (5th Cir.2009) (per curiam) (noting that the plaintiff failed to demonstrate that his employer applied certain "objective criteria ... in a discriminatory manner with regard to age"); *Harris v. Double G. Coatings, Inc.,* 114 F.3d 1184, *7 (5th Cir.1997)

(unpublished); *Risher,* 889 F.2d at 597. Here, Smith does point to three instances of disparate application of the mandatory-retirement policy across race and gender lines.[3] Therefore, Smith's purported lack of "qualification" for the job due to the SMPD's age policy is not fatal to his ability to make out a prima facie case, so long as he was otherwise qualified for the job— which the City does not dispute he was.

■ The City further argues that Smith has not satisfied the fourth element of the prima facie case, contending that Roy, Resweber, and Thierry were not "similarly situated employees" who were treated more favorably than Smith "under nearly identical circumstances." *Lee,* 574 F.3d at 259. On the one hand, at the time Smith was forced to retire, Roy, Resweber, and Thierry—police dispatchers and a school-crossing guard—had different job duties within the police department than Smith— the assistant police chief, who, unlike the others, was required to perform active police functions and use a weapon. On the other hand, *all* employees of the police department—regardless of their duties or job descriptions—were subject to the policy by the terms of St. Martinville City Ordinance section 16.5–41. *Compare, e.g., Lee,* 574 F.3d at 259–60 ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."), *with, e.g., Freeman v. Madison Metro. Sch. Dist.,* 231 F.3d 374, 382–83 (7th Cir.2000) ("[I]n determining whether employees are similarly situated,

the inquiry varies depending upon the type of employer conduct at issue.... Here, the uncontradicted testimony was that the policy at issue was applied to all employees regardless of job description.... Nothing in the policy rendered [the employer's proffered] distinction [among employees] meaningful.... [T]he court erred in concluding that the proposed [comparator employees] were not similarly situated[.]"). On these facts, we conclude that there is a genuine issue of fact as to whether Thierry, Roy, and Resweber were similarly situated.

We therefore conclude that Smith has met his initial burden under *McDonnell Douglas* of raising a genuine issue of material fact on the elements of a prima facie case of discrimination.

### B.

Next, we consider whether the City has met its burden of articulating "some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see Johnson,* 351 F.3d at 621. First, the City points to Mayor Nelson's statement in his affidavit in which he states that until Smith brought Thierry, Roy, and Resweber's ages to his attention at the City Council meeting in February of 2011, no one in City government was aware that those employees were over the age of sixty-five. Mayor Nelson avers that it was an "oversight" to allow these employees to remain employed past the age of sixty-five. Second, the City asserts that Thierry, Roy, and Resweber were not performing police functions and that the age requirement would not be relevant to those employees' positions except for the fact that they were formally classified as SMPD employees.

---

**3.** While Thierry is African–American and Roy and Resweber are male, and yet were not

terminated under the policy, the City does not contend that those facts are significant.

In support, the City points to the fact that once it learned that those police department employees were over the age of sixty-five, it transferred Roy, the part-time radio dispatcher, and Resweber, the part-time school-crossing guard, to a new department for school crossing guards, and that by that time, Thierry, the full-time police dispatcher, had voluntarily retired several years earlier, shortly after her sixty-fifth birthday, rendering the question of her employment moot. Smith concedes that the City has offered legitimate, nondiscriminatory reasons for its employment action. We therefore turn to the third step of the *McDonnell Douglas* framework.

## C.

■ In the final *McDonnell Douglas* step, we consider whether Smith has met his burden of demonstrating that the City's proffered reasons for the adverse employment action may have been pretextual or driven by mixed motives. First, Smith asserts that the City's reliance on its mandatory requirement policy is a pretext because this policy was not followed in regard to other employees of the police department.[4] He also argues that Mayor Nelson's statement that no one in City government was aware that some employees remained in the police department after the age of sixty-five is "false or unworthy of credence." *Vaughn,* 665 F.3d at 637; *see also DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 171 (2d Cir.1993) ("[A]

plaintiff may be able to put into question the genuineness of the employer's putative nondiscriminatory purpose by arguing that the stated purpose is implausible, absurd or unwise."). In support, Smith contends that it would have been easy for the City to look up the ages of these individuals if it had cared to do so.

Smith also argues that his termination was either pretext for or partially motivated by discriminatory animus because the City's proffered reason for terminating him changed over time. Specifically, Smith says that the City cited only his age in his notice of termination—but in later court filings, the City alleged for the first time that Smith was confrontational and caused morale problems within SMPD. Smith argues that the City's reference to Smith's purported confrontation attitude is a "post hoc rationalization" for his termination and that it creates a genuine issue of fact as to whether the City's proffered legitimate, nondiscriminatory reason was pretextual.[5] The City acknowledges that it referenced Smith's "confrontational" attitude in the district court, but states that "since [Smith] had reached mandatory retirement age, there was no point in bringing disciplinary action against him."

We conclude that Smith has failed to point to summary-judgment evidence that his forced retirement was pretextual or driven by mixed discriminatory and nondiscriminatory motives. "A defendant's failure to follow its own policy is not probative of discriminatory animus ... ab-

---

4. *See, e.g., Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 ("[A]lthough the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual' " (citations omitted) (alterations omitted)).

5. Quoting *Townsend v. Wash. Metro. Area Transit Auth.,* 746 F.Supp. 178, 186 (D.D.C. 1990), and citing *Weiss v. JPMorgan Chase & Co.,* 332 Fed.Appx. 659, 663 (2d Cir.2009) ("Inconsistent or even post-hoc explanations for a termination decision may suggest discriminatory motive." (citing *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir.2000))), and *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 171 (2d Cir.1993).

442

sen[t] ... proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir.2007) (citation omitted) (quotation marks omitted). Smith fails to explain why the City's proffered explanation is unworthy of credence, absurd, or unwise. Furthermore, other than speculation and his own subjective belief that the City's decision was discriminatory, Smith does not point to summary-judgment evidence contradicting the City's proffered explanation for terminating him but not Thierry, Resweber, and Roy. This is insufficient to create genuine issue of fact on the third step of *McDonnell Douglas. See Giles,* 539 Fed.Appx. at 545; *Byers,* 209 F.3d at 426–27.

Similarly, Smith fails to identify a genuine issue of fact with respect to the City's reference to his "confrontational" attitude. While we agree that inconsistent or post-hoc explanations for a termination decision may be indicative of pretext, *see, e.g., Weiss,* 332 Fed.Appx. at 663, the record does not reflect that that was the case here. The City has never relied on Smith's purported confrontational attitude as a legitimate, nondiscriminatory reason for his termination, merely mentioning it in passing in a district court filing. Rather, the City always maintained that it terminated Smith pursuant to the mandatory-retirement policy codified in St. Martinville City Ordinance section 16.5–41, and its explanation has not materially differed since that time. The City explained that the only reason it did not also terminate Thierry, Roy, and Resweber pursuant to those policies was because of an oversight, which the City promptly remedied as soon as Smith brought it to the City Council's attention. Under the circumstances, Smith has failed to create a genuine issue of fact as to whether the City's legitimate, nondiscriminatory reason was actually a pretext for discriminating against him due to his race or sex.

The District Court properly granted summary judgment for the City of St. Martinville.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.