**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 14, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-30014

CATHERINE V. JOHNSON,

Plaintiff,

versus

STATE OF LOUISIANA, ETC; ET AL,

Defendants

GAIL E. COOPER; DEBRA CELESTINE;
LORRAINE KELLER-JENNINGS; CYNTHIA HENLEY;
PATRICIA CHAPMAN; THAIS WALKER; LYNETTE WALKER,

Plaintiffs - Appellants,

versus

BOARD OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY, MEDICAL CENTER,

Defendant - Appellee.

Appeals from the United States District Court
For the Eastern District of Louisiana

Before REAVLEY, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Plaintiffs Debra Celestine, Lorraine Keller-Jennings, Cynthia

Henley, Patricia Chapman, Thais Walker, and Lynette Walker

("Grouped Plaintiffs") and Gail Cooper brought Title VII and state law employment discrimination claims against the Board of Supervisors of Louisiana State University Medical Center ("LSUMC"). The district court granted summary judgment for LSUMC, holding that neither Grouped Plaintiffs nor Cooper established a prima facie employment discrimination case because they did not show themselves to be qualified for the coveted positions. We AFFIRM the district court's holding as to the Grouped Plaintiffs, but we REVERSE the holding as to Cooper and REMAND her portion of the case for further proceedings.

I

Grouped Plaintiffs and Cooper sued LSUMC, alleging employment discrimination in violation of state law and Title VII of the Civil Rights Act of 1964.[1] The plaintiffs allege that LSUMC hired Jacqueline Donellon and Rose Klein, two Caucasian women who did not meet LSUMC's objective job requirements. The plaintiffs allege that LSUMC used restricted appointments - an alternative hiring method - to avoid posting the job openings and to hire the under-qualified Caucasian women. The district court granted Defendant's summary judgment, finding that the plaintiffs did not establish a prima facie case of employment discrimination under *McDonnell*

---

[1] Federal law governs the plaintiffs' state law claim. Louisiana looks to federal law to decide employment discrimination cases. *See Plummer v. Marriot Corp.*, 654 So.2d 843, 848 (La.App. 4th Cir., 1995).

*Douglas Corp. v. Green*[2] because the plaintiffs were not qualified for the coveted positions. The district court made this determination by looking solely at LSUMC's objective requirements; the court considered irrelevant the allegations that Donellon and Klein - the employees actually hired - did not meet the objective requirements.

All of the plaintiffs work in the finance department of LSUMC. The positions at issue are Accountant Supervisor 1 and Administrative Manager 3. The minimum qualification for Accountant Supervisor 1 is a bachelor's degree with twenty-four semester hours in accounting and three years professional level experience in accounting or financial auditing. The minimum qualification for Administrative Manager 3 is a bachelor's degree with twenty-four semester hours in accounting and two years professional level experience in administrative services, accounting, auditing, purchasing, or staff development.

LSUMC placed Donellon and Klein in these positions through the use of restricted appointments - an exception to the general hiring practice. A restricted appointment is a temporary position not to exceed six months.[3] The appointees must be qualified for the positions.[4] The civil service department does not check the

---

[2] 411 U.S. 792 (1973).

[3] State Civil Service Commission Rule 8.10.

[4] Policy No. 8005 of the Department of Health and Human Resources, Office of Charity Hospital at New Orleans.

qualifications of employees hired to restricted appointments; the local human resources department has the power to decide for itself who is qualified. However, LSUMC's own policy requires those hired through restricted appointments to be qualified for the position. LSUMC authorized the hiring of Donellon and Klein in March 1999 to restricted appointments in Accounting Supervisor 1 positions.[5] Soon after this authorization, LSUMC realized that neither Donellon nor Klein satisfied the qualification requirements for the position. Donellon and Klein were then moved to the position of Administrative Manager 3, which requires less professional level experience. Kaye Hamilton, defendant's expert and Human Resources Program Consultant Supervisor with the Louisiana Department of Civil Services, testified that she could not determine whether Donellon and Klein were qualified for the position because she needed more information about their work history. Nonetheless, Donellon and Klein served in that position temporarily. Donellon served from April 26, 1999, until August 3, 1999, and Klein served from May 3, 1999, until August 2, 1999.

Grouped Plaintiffs did not qualify for either of the coveted positions as measured by the objective requirements. Each of the Grouped Plaintiffs lacked the education and experience requirements of Accountant Supervisor 1 and Administrative Manager 3.

---

[5] Defendant contends that Klein was never placed in this position, but because the plaintiffs appeal a summary judgment, this court must accept the facts in the light most favorable to the plaintiffs.

Accordingly, their names did not appear on a list of eligibles for the job openings, and they were not considered for the positions. Finally, Grouped Plaintiffs presented no evidence that they were at least as qualified as Donellon and Klein.

All concede, however, that Cooper was qualified for both positions at the time of hiring. The dispute centers around whether Defendant's expert correctly determined that Cooper would not have appeared qualified based on a review of her file at the time of the job openings. Defendants and the district court below argue that Cooper's file was not supplemented with additional professional level experience, which would qualify her for both positions. Because the file was not supplemented, Hamilton stated in her affidavit that she did not believe Cooper was qualified. As a result, her name would not appear on a list of eligibles. With this in mind, the district court found that Cooper did not establish a prima facie case.

Cooper disputes this finding. She argues that her file included a supplement that may have qualified her for the position, but Hamilton ignored it when making her affidavit. Hamilton admitted in her deposition that she saw the supplement in Cooper's file, but she stated that she could not determine its origin. Cooper discussed this supplement, as well as an affidavit of a former boss, with Hamilton during her deposition. Based on the additional information acquired at the deposition, Hamilton testified that Cooper was qualified for both positions. The

5

parties dispute whether the supplement was in the file at the time of the hiring decision.

Cooper also argued that in hiring Donellon and Klein, LSUMC ignored its own hiring policies. First, it placed employees who did not meet the job requirements in restricted appointments. Second, it did not first attempt to fill the positions with internal employees. Cooper alleges that race animated LSUMC's actions, but no determination was made on the issue as a result of the summary judgment.

The district court granted Defendant's summary judgement because it believed the plaintiffs had not established a prima facie claim of employment discrimination. That is, the plaintiffs did not meet the prima facie elements required by *McDonnell Douglas*.[6] The court found that neither the Grouped Plaintiffs nor Cooper was qualified for the positions. The court ignored the allegations that Donellon and Klein were not qualified for the positions and that LSUMC used the restricted appointment procedure to discriminate against the plaintiffs. The court also ignored the allegation that LSUMC violated its own policies. The district

---

[6] 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (I) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.").

court viewed all of these allegations as irrelevant to the prima facie determination.  The court would consider them relevant only after the plaintiffs presented a prima facie case.  Not believing the plaintiffs to have done so, the court did not consider the allegations and granted summary judgment for Defendants.

Grouped Plaintiffs and Cooper appeal the summary judgment. The plaintiffs argue that LSUMC used the restricted appointment procedure to avoid general hiring policies, which allowed them to hire unqualified Caucasian employees.  Grouped Plaintiffs argue that Defendants cannot apply the objective requirements to them until Defendants prove that the requirements were also applied to Donellon and Klein.  Cooper argues that the court erred in holding that she was not qualified.

II

This court reviews the granting of a summary judgment motion de novo.[7]  We "go beyond the pleadings to determine whether there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8]

Title VII[9] governs the plaintiffs' employment discrimination claims. The Title VII inquiry is "whether the defendant

---

[7] *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).

[8] *Id.*

[9] Amended and Codified as 42 U.S.C. § 2000e *et seq.*

7

intentionally discriminated against the plaintiff."[10]  Resolution

of a claim involves a three-step, burden-shifting analysis.[11]

First, a plaintiff must raise a genuine issue of material fact on

each element of his prima facie case.[12]  Second, if the plaintiff

presents a prima facie case, the defendant must then give a

legitimate, nondiscriminatory reason for the employment decision.[13]

Third, the plaintiff must raise a genuine issue of material fact

that shows the defendant's reason may be a pretext for

discrimination.[14]  This appeal focuses solely on the first step:

whether the plaintiffs present a prima facie case of employment

discrimination.

*McDonnell Douglas* determines whether a plaintiff makes a prima

facie case of employment discrimination.[15]  A plaintiff must:

> carry the initial burden under the statute of
> establishing a prima facie case of racial discrimination.
> This may be done by showing (I) that he belongs to a
> racial minority; (ii) that he applied and was qualified
> for a job for which the employer was seeking applicants;

---

[10] *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[11] *Lindsey v. Prive Corp.*, 987 F.2d 324, 326 (5th Cir. 1993); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *McDonnell*, 411 U.S. at 802.

8

(iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[16]

If a plaintiff establishes a prima facie case, it creates a "rebuttable 'presumption that the employer unlawfully discriminated against'" the plaintiff.[17] The Court noted that "[t]he prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'"[18]

Employers may succeed on summary judgment by establishing that the plaintiff is not qualified for the coveted position. An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not "qualified." However, only objective requirements may be used in making this argument.[19] Otherwise, an employer could "utilize wholly subjective standards by which to judge its

---

[16] *Id.*

[17] *Aikens*, 460 U.S. at 714 (citing *Burdine*, 450 U.S. at 254).

[18] *Aiken*, 460 U.S. at 715 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

[19] *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001).

employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory."[20]

The requirement that an employee must apply for the position at issue is interpreted to accommodate various situations. For instance, an employee does need to apply to establish a prima facie case when the position was not publicized.[21] Instead, the employee must show that the company had a duty or reason to consider her for the position.[22]

The ultimate burden of persuasion remains with the plaintiff.[23] Once the plaintiff establishes a prima facie case, and the defendant provides a legitimate, nondiscriminatory reason for the employment decision, the burden shifts back to the plaintiff.[24] However, the question of whether the plaintiffs here met their ultimate burden is not at issue in this appeal. The Defendant and the district court below rely solely on the proposition that the plaintiffs' claims fail because they are not qualified.

---

[20] *Id.* (quoting *Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980)).

[21] *Jones v. Flagship Intern.*, 793 F.2d 714, 724 (5th Cir. 1986).

[22] *Id.*

[23] *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (citing *Burdine*, 450 U.S. at 253).

[24] *Id.*

The primary contention of Grouped Plaintiffs is that LSUMC cannot rely on its objective requirements because Defendant did not apply those standards to the employees actually hired. Grouped Plaintiffs argue that LSUMC may rely on the objective job requirements only after it shows that the requirements were also applied to Donellon and Klein. The district court dismissed the allegations of disparate application of the requirements as irrelevant to the prima facie determination:

> At the prima facie stage of inquiry, the qualifications, or lack thereof of the hirees, is not pertinent. In order to establish a prima facie case of intentional discrimination, Plaintiffs must make a showing that they were qualified for the position. The Grouped-Plaintiffs have failed to satisfy this threshold burden.

The district court determined that because the plaintiffs did not show themselves to be qualified as measured by the objective requirements, all other considerations were irrelevant.

The Grouped Plaintiffs rely on *Carter v. Three Springs Residential Treatment*,[25] an Eleventh Circuit case. In *Carter*, the plaintiff alleged that his employer chose to promote another employee instead of the plaintiff because of his race.[26] The defendant argued that Carter did not make a prima facie case

---

[25] 132 F.3d 635 (11th Cir. 1998).

[26] *Carter*, 132 F.3d at 637.

11

because he was not qualified for the position.[27]  The defendant based this argument, in part, on the fact that Carter lacked the clinical experience required by the job description.[28]  However, the court refused to consider clinical experience in determining whether Carter was qualified because the defendant did not apply the requirement to the eventual hiree.[29]  Because the chosen employees did not have the "required" clinical experience, but were hired nonetheless, "clinical experience cannot be considered to be a minimum qualification."[30]  Unlike the district court in this case, the Eleventh Circuit found this inquiry to be appropriate during the prima facie stage of the case.  Carter was not precluded from making a prima facie case simply because he did not meet an objective requirement that was not applied to the eventual hiree. The court went on to find that Carter was just as qualified as the employees hired; therefore, a genuine issue of fact existed as to whether the employment decision was based on race.[31]

   *Sledge v. Goodyear Dunlop Tires North America, Ltd.*,[32] another Eleventh Circuit case, also addresses the issue before this court.

---

[27] *Id*. at 643.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 644–45.

[32] 275 F.3d 1014 (11th Cir. 2001).

In *Sledge*, an employee brought a Title VII claim against his employer, alleging that he was passed over for a promotion because of his race.[33] The district court granted summary judgement for the defendant, holding that Sledge failed to make a prima facie case because he did not show himself to be qualified.[34] The district court based this determination on the fact that Sledge failed a required test.[35] The district court did not consider the fact that other white employees applied for the position, failed the test, but were promoted nonetheless.[36] The Eleventh Circuit held that Sledge proved himself to be qualified for the position – based on his experience and an affidavit from his supervisor – and that he could not be deemed "unqualified" based on his failure of a test that was not applied equally to all employees.[37] The court also stated that because of the unequal application of the testing requirement, Sledge illustrated direct discrimination and did not need the benefit of the *McDonnell Douglas* presumption.[38]

---

[33] *Id*. at 1016-18.

[34] *Id*. at 1015.

[35] *Id*. at 1015 n.1, 1016-17.

[36] *Id*. at 1019-20.

[37] *Id*. at 1020.

[38] *Id*. at 1019 n.10.

LSUMC offers no response to the allegedly disparate application of its objective requirements, or the use of restricted appointments in an allegedly discriminatory manner.

The Fifth circuit has not addressed *Carter* or *Sledge*, but their application and interpretation of *McDonnell Douglas* is sound. The district court believes it should address the unequal application of the objective requirements at a later stage of the case, but this solution would disallow courts from remedying this type of discrimination. A plaintiff would never reach the later stage of the case if the unequal application were not addressed at the prima facie stage. Allowing an employer to point to objective requirements in arguing that a plaintiff is unqualified, even though the requirements were not applied to other employees, would subvert the intent of Title VII and *McDonnell Douglas*.

The Eleventh Circuit's approach squares with *McDonnell Douglas*. The last element of a prima facie case requires a showing that the employer sought other employees *with the plaintiff's qualifications*.[39] This focuses the prima facie determination not on a company's objective requirements. Rather, it focuses on the plaintiff's qualifications in relation to the employees actually hired. With this in mind, the district court erred in looking solely at the objective requirements and ignoring their possible unequal application.

---

[39] *McDonnell Douglas*, 411 U.S. at 802 (emphasis added).

14

Finally, this approach squares with our caselaw. In *Medina v. Ramsey Steel Co*,[40] we disallowed the use of subjective requirements during the prima facie stage; to hold otherwise would allow employers to argue a lack of subjective qualification - which no one could judge - and obtain summary judgment. Similarly here, hiring an employee who does not meet the company's objective requirements is basically a subjective determination: the employee can do the job despite the fact that she does not meet the technical requirements. Whether or not this determination by the employer was animated by race is a question to be answered by the fact-finder during trial, not by the judge at the prima facie stage.

We find that the district court erred by applying objective requirements to the Grouped Plaintiffs without considering whether the requirements were equally applied to the employees actually hired. However, the decision to grant summary judgment as to the Grouped Plaintiffs was not erroneous because they offered no evidence that they were at least as qualified as Donellon and Klein. Grouped Plaintiffs do not argue that they are qualified, as measured by Defendant's objective requirements, for either Accountant Supervisor 1 or Administrative Manager 3. The uncontroverted testimony of LSUMC's expert is that none of the Grouped Plaintiffs meet the requirements. Furthermore, Grouped

---

[40] 238 F.3d 674, 680 (5th Cir. 2001).

15

Plaintiffs presented no evidence that they are at least as qualified as Donellon and Klein. Accordingly, even if the district court applied the Eleventh Circuit's analysis, the Grouped Plaintiffs still fail to establish a prima facie claim.

In *Carter* and *Sledge*, the plaintiffs showed themselves to be qualified for the positions as measured by the standards applied to those actually hired. Carter provided the court a great deal of evidence regarding his education and work history, both of which were extensive.[41] Sledge obtained a letter from his supervisor that he could do the work.[42] The Grouped Plaintiffs, on the other hand, offer no evidence that they are qualified to do the work, or that they are as qualified as Donellon and Klein. As a result, they fail to make a prima facie case of employment discrimination.[43]

Grouped Plaintiffs cite no authority to support their claim that LSUMC must first show that it applied the objective requirements to Donellon and Klein before it can apply them to others. A plaintiff claiming employment discrimination must bear its burden, part of which is showing herself to be qualified. Here, it was the Grouped Plaintiffs' burden to show that they were qualified. If LSUMC's objective requirements were not applied to the employees actually hired, the Grouped Plaintiffs must show this

---

[41] *Carter*, 132 F.3d at 643-44.

[42] *Sledge*, 275 F.3d at 1019-20.

[43] *McDonnell Douglas*, 411 U.S. at 802.

16

in order to make the requirements inapplicable to the "qualification" determination at the prima facie stage.

Cooper alleges the same Title VII and state law employment discrimination claims. The analysis for Cooper's case differs because, unlike the Grouped Plaintiffs, Cooper is qualified for both the Accounting Supervisor 1 position and the Administrative Manager 3 position. Cooper alleges that the district court erred by finding that she was unqualified for the positions and that the Defendant had no duty to consider her, and in refusing to consider the unequal application of the objective requirements.

The district court found that Cooper failed to supplement her employment file with information that showed her to be qualified for the positions. It is undisputed that it is an employee's duty to supplement his or her employment file. The district court found that at the time her file was reviewed, she did not appear qualified. This resulted in her name being left off a list of eligible employees for the position. Because she appeared unqualified at the time of the hiring decision, the district court held that she failed to make a prima facie claim.

Cooper disputes that she failed to supplement her file. She argues that Ms. Hamilton, defendant's expert who submitted an affidavit and was later deposed, did not rely on all appropriate employment application material in forming her initial opinion that Cooper was not qualified. Cooper claims that because her file was

17

supplemented at the time Ms. Hamilton signed her affidavit, the affidavit incorrectly opines that Cooper was not qualified.

Having completed a de novo review of the record, we believe there to be genuine issues of fact that preclude summary judgment. First, the state of Cooper's employment file raises an issue of fact. The district court below found and defendants on appeal argue, based on Kaye Hamilton's deposition, that Cooper's supplement showing additional experience was not on file. However, later in her deposition Ms. Hamilton admitted that the supplement was included in the file. She admitted seeing it, but noted that there was no official heading; however, she agreed that the document could cause a reviewer to investigate further. Relatedly, there are fact issues regarding the valid portions of Hamilton's affidavit. She recanted part of her affidavit regarding the requirements for one to apply for a position during her deposition.

Second, it remains unclear whether Cooper is at least as qualified as Donellon and Klein. As discussed above, it was error for the district court to apply the objective requirements to Cooper while failing to consider that LSUMC did not apply the requirements to the Caucasian employees. The Eleventh Circuit's approach to this issue - unequal application of objective job requirements - is sound. Allowing an employer to point to objective requirements in arguing that a plaintiff is unqualified, even though the requirements were not applied to other employees,

18

would subvert the intent of Title VII and *McDonnell Douglas*. The parties concede that Cooper is qualified for both positions. Donellon and Klein were not qualified for Accounting Supervisor 1, although Defendant moved them out of the position as soon as this was discovered. It is unclear whether Donellon and Klein were qualified for the Administrative Manager 3 position. The expert testified in her deposition that she would need more information regarding their previous employment responsibilities to decide whether they were qualified. This determination was never made because Defendant used the restricted appointment process, which allowed it to make the hiring decision locally.

Considering Cooper's evidence showing her to be qualified, the disputed state of Cooper's file at the time of the employment decision, and the uncertainty regarding Donellon's and Klein's qualifications, fact issues exist and this court must reverse and remand Cooper's claim.

IV

We AFFIRM the district court's decision to grant LSUMC's summary judgment as to the Grouped Plaintiffs, but we REVERSE the district court's decision to grant LSUMC's summary judgment as to Cooper and REMAND her claim for further proceedings.

19