# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30919

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2014

Lyle W. Cayce
Clerk

SANDRA A. PACE,

Plaintiff - Appellant

v.

LIVINGSTON PARISH SCHOOL BOARD,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CV-234

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Sandra Pace appeals an order granting defendant Livingston Parish School Board's Rule 50(b) motion for judgment as a matter of law after a jury returned a verdict in favor of her on her claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. For the following reasons, we REVERSE the judgment of the district court and REMAND for further proceedings.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30919

## FACTS AND PROCEEDINGS

On July 7, 2006, Sandra Pace applied for a newly-created position as the Warehouse Manager for the Livingston Parish School Board ("LPSB").[1]  Pace had been employed by the LPSB since March 4, 1985, and since 1990 she had been employed as the LPSB's Purchasing Agent.  The warehouse manager position would have meant a promotion and an increase in salary for her.  Pace is a white female.  On September 7, 2006, the LPSB voted to appoint Ron Colar, a black male, to the warehouse manager position.  Randy Pope was the Parish Superintendent for the LPSB, while David Tate and Julius Prokop III were members of the LPSB.

The events leading up to Colar's selection were factually disputed at a jury trial.  After a call for applications, the process consisted of a committee of three interviewers who would then give their recommendation to Terry Hughes, the business manager.  Superintendent Randy Pope would then make a recommendation to the LPSB, which would make the final decision.

While applicants for the position were required to possess a valid driver's license, a high school diploma, and five or more years of "warehouse experience," the term warehouse experience was not further defined.  Pace presented testimony of Terry Hughes, the business manager, that he had created a list of thirteen job criteria which he used to determine "warehouse experience," and that Pace fulfilled these criteria.  Pace presented evidence that she and Colar were the only two candidates who were "strongly considered" for the position of the seven candidates who applied.  Pace testified at her trial and presented evidence that her "warehouse experience" included:

- Twenty-two years working in the school system.

---

[1] These facts were stipulated at trial by both parties.  The district court describes them as "Uncontested Facts."

2

- Sixteen years as a purchasing agent with the first three years as de facto warehouse manager.

- Duties as a purchasing agent that included the business aspects of managing and overseeing the warehouse, ordering goods for the warehouse, receiving orders into the warehouse, reconciling inventory with purchase orders and accounts payable, and shipping of the inventory from the warehouse to the schools and departments.

- Efforts expanding the warehouse to meet new school system demands by training new employees and modernizing the computer software to better track and deliver shipments into and out of the warehouse.

Pace presented evidence that David Tate, a school board voting member, received a phone call on the day of the LSPB's vote from Randy Pope, the LSPB superintendent, recommending that Tate appoint Ron Colar to the position because the Livingston Parish Black Voters League had expressed concern about a lack of black workers in supervisory positions. Pace also presented evidenced that Superintendent Pope called Julius Prokop, another school board voting member, before the vote to discuss his recommendation of Ron Colar based on his concerns regarding the Livingston Parish Black Voters League. The LPSB selected Ron Colar at the school board meeting.

The LPSB's race neutral explanation for the decision was that Pace was unqualified for the position for lack of five years of "warehouse experience." On September 7, 2006, Terry Hughes prepared and presented to the LPSB a chart which represented that Pace did not meet the "warehouse experience" minimum requirements. The chart, however, included under the heading "warehouse experience" Colar's time as a "Truck Driver" and "Custodian." It also included under "warehouse experience" another applicant's time working at Toys "R" Us as a "Receiving and Sales Floor Supervisor" that included

3

seemingly non-warehouse activities such as customer service, cashiers, returns, and counting registers.

The case was tried to a seven-person jury from March 4–5, 2013 on claims of gender and race discrimination.[2] At the close of the plaintiff's case, the LPSB moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 on the claims because Pace did not have the "five years of warehouse experience" on the racial discrimination claim and on the gender discrimination claim because no evidence of gender-based discrimination had been presented. The district court granted the motion as to gender discrimination but permitted the case to proceed on the race discrimination claim. The LPSB rested after its presentation of evidence and Pace did not offer rebuttal evidence. The LPSB again moved for judgment as a matter of law. The court deferred its ruling on the racial discrimination claim and submitted the case to the jury for decision. During deliberations, the jury returned with a question as to why they could not consider gender and age discrimination as well, and the court clarified that those issues were not before them and should not be considered.

After additional deliberation, the jurors returned a verdict in favor of the plaintiff. They found "that Sandra Pace was qualified for the position for which she applied; namely, the position of warehouse manager." They found that she "was the subject of an adverse employment action," that "more likely than not [ ] race was a motivating factor in the selection of the warehouse manager position," and that "more likely than not [ ] Sandra Pace was treated less favorably or was discriminated against for the position of warehouse manager because she was Caucasian."

---

[2] The jury was asked to self-identify their race and gender to the court during *voir dire*. The jury consisted of four white females, a female who described herself as "Mexican," a black female, and an Asian male.

No. 13-30919

The court indicated it would consider the LPSB's motion for judgment as a matter of law upon renewal of the motion. The LPSB timely renewed its motion pursuant to Rule 50(b), alleging that there was no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff. In the alternative, the LPSB filed a motion for a new trial under Rule 59 "because the jury's verdict was against the great weight of the evidence."

On July 31, 2013, the district court granted the motion for judgment as a matter of law dismissing the plaintiff's racial discrimination claim. It reasoned that the plaintiff did not meet the requirement of presenting a prima facie case of racial discrimination because "there was no dispute of material fact as to whether she was qualified for the position according to the objective, stated qualifications for the job" of five years of warehouse experience. While noting the "unenviable position of attempting to second guess the school board relative to the meaning of the term," the district court concluded that the LPSB's requirement for "five years experience" was not the same as "five years or equivalent" experience. It further held that, even assuming Pace had asserted a prima facie case of discrimination in her testimony and evidence, Pace failed to establish that these reasons were "merely pretextual." Pace appeals the court's ruling on the motion for judgment as a matter of law on the racial discrimination claim.

**STANDARD OF REVIEW**

"Our review of a district court's ruling on a motion for judgment as a matter of law is *de novo*." *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 294 (5th Cir. 2010). "Our standard of review with respect to a jury verdict is especially deferential." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc) (alteration omitted). "The jury verdict must be upheld unless a reasonable jury would not have a legally sufficient

5

No. 13-30919

evidentiary basis to find for the party on that issue." *Porter v. Epps*, 659 F.3d 440, 444 (5th Cir. 2011) (internal quotation marks omitted).

## DISCUSSION

### I.

"It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a).

> Resolution of a claim involves a three-step, burden-shifting analysis. First, a plaintiff must raise a genuine issue of material fact on each element of his prima facie case. Second, if the plaintiff presents a prima facie case, the defendant must then give a legitimate, nondiscriminatory reason for the employment decision. Third, the plaintiff must raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination.

*Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003) (footnotes omitted). "[W]e apply the modified *McDonnell Douglas* framework in racial discrimination cases under Title VII." *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 382 (5th Cir. 2012).

> Under the traditional framework, a plaintiff, having the burden of production shifted back to him, must show that the defendant's reason was a pretext for unlawful discrimination. But under the modified framework, the plaintiff in this situation is required to show either that the defendant's reason was pretextual, or that the reason, while true, was only one of the reasons for its adverse action, and that another 'motivating factor' for the action was the plaintiff's protected characteristic.

*Id.*

A plaintiff may make a prima facie case of discrimination by showing by a preponderance of the evidence that 1) she is a member of a protected class, 2) she is qualified for a position, 3) she suffered an adverse employment action and 4) she was replaced by someone outside the protected class, or treated less

6

favorably than other similarly-situated employees outside the protected class. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). "The ultimate burden of persuasion remains with the plaintiff." *Johnson*, 351 F.3d at 622.

An employer can defeat a plaintiff's prima facie case "by establishing that the plaintiff is not qualified for the coveted position. An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.' However, only objective requirements may be used in making this argument." *Id.*

## II.

Whether it was reasonable for the jury to find that Sandra Pace possessed the required qualifications for the warehouse manager position is the critical issue. The point was argued vigorously by both sides at trial. Pace and her lawyers contended that she was eminently qualified for the position. The LPSB argued the opposite, telling the jury, "The law says that it's an employer's prerogative to set the qualifications for the job. Ms. Hughes testified that she was the person who set the qualifications. The qualifications were five years warehouse experience. . . Does she have five years warehouse experience? No." The jury returned a verdict which included the explicit finding that Pace was qualified.

The case of *Johnson v. Louisiana* is not dispositive of the issue before us. In that case, a group of six "grouped plaintiffs" and a woman named Gail Cooper alleged racial discrimination under Title VII for the employer's hiring of two "under-qualified Caucasian women." *Johnson*, 351 F.3d at 618-19. The district court granted summary judgment for the employer finding that the plaintiffs failed to establish a prima facie case of employment discrimination "because the plaintiffs were not qualified for the coveted positions" by looking solely at the "objective requirements" for the positions. *Id.* at 619. One of the employment positions required "a bachelor's degree with twenty-four semester

hours in accounting and three years professional level experience in accounting or financial auditing" while the other required "a bachelor's degree with twenty-four semester hours in accounting and two years professional level experience in administrative services, accounting, auditing, purchasing, or staff development." *Id.* The plaintiffs "lacked the education and experience requirements," so "their names did not appear on a list of eligibles for the job openings, and they were not considered for the positions." *Id.* at 620. Plaintiff Cooper, though, "was qualified for both positions at the time of hiring," but dispute existed over whether Cooper had supplemented her employment file in such a way that the hiring committee would know that she was so qualified at the time of hiring. *Id.* at 625. On appeal, we upheld the grant of summary judgment for the six unqualified plaintiffs. *Id.* at 626. We reversed the grant of summary judgment as it pertained to Cooper, since a genuine issue of material fact remained in dispute. *Id.*

The focus in that opinion (and the cases it analyzed) was the fact that the employer ultimately hired employees who were also not qualified under the minimum qualifications set forth by the employer, and the impact that fact had on the admittedly unqualified grouped plaintiffs who were not hired. *Id.* at 622-23 ("The primary contention of Grouped Plaintiffs is that [the employer] cannot rely on its objective requirements because Defendant did not apply those standards to the employees actually hired."). It was uncontested that the grouped plaintiffs did not meet the objective minimal job requirements. *Id.* However, Pace's argument to the district court and throughout the trial was that she had five years of "warehouse experience," if that undefined term was construed broadly, and that "[s]he was the best qualified."

While we may be sympathetic to the district court's conclusion that the undefined phrase "warehouse experience" should be construed narrowly, jury verdicts must be "upheld unless a reasonable jury would not have a legally

No. 13-30919

sufficient evidentiary basis to find for the party on that issue." *Porter*, 659 F.3d at 444. In light of the ambiguity in the phrase, the jury considered the employer's argument that Pace did not have the requisite experience, and found she did. They could have relied on her presentation of evidence including: 1) her twenty-two years working in the school system, 2) her sixteen years as a purchasing agent with the first three years as a de facto warehouse manager, 3) her duties as purchasing agent including the business aspects of managing and overseeing the warehouse, ordering goods for the warehouse, receiving orders into the warehouse, reconciling inventory with purchase orders and accounts payable, and shipping of the inventory from the warehouse to the schools and departments, and/or 4) her efforts in expanding the warehouse by training new employees and modernizing the computer software to better track and deliver shipments into and out of the warehouse. In addition, the jury received the testimony from Brent Bencaz, Pace's supervisor, that he believed her to be qualified, and Terry Hughes's testimony that Pace met the thirteen job criteria that she believed the position required. This testimony proved enough to convince the jury, and nothing in the record suggests that this decision was irrational or unreasonable.

## III.

The jury also rejected the LPSB's race neutral explanation for the adverse employment action, finding that Pace "was the subject of an adverse employment action," that "more likely than not [ ] race was a motivating factor in the selection of the warehouse manager position," and that "more likely than not [ ] Sandra Pace was treated less favorably or was discriminated against for the position of warehouse manager because she was Caucasian."

*Reeves v. Sanderson Plumbing Products, Inc.* addressed "the kind and amount of evidence necessary to sustain a jury's verdict that an employer unlawfully discriminated." 530 U.S. 133, 137 (2000). In that case an employee

brought an action against his employer "contending that he had been fired because of his age." *Id.* at 138. The company responded that the plaintiff had been fired because he failed to "maintain accurate attendance records" for employees in his department. *Id.* The plaintiff introduced evidence that he had kept accurate records and that one of his superiors exhibited "age-based animus in his dealings" with the plaintiff. *Id.* The district court denied motions for judgment as a matter of law by the employer. *Id.* The jury found for the plaintiff. *Id.* at 139. The employer appealed and the circuit court reversed, "holding that petitioner had not introduced sufficient evidence to sustain the jury's finding of unlawful discrimination." *Id.* The Supreme Court reversed, holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. "It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147.

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* at 148.

The LPSB argued at trial that Superintendent Pope's phone calls were inconsequential in the ultimate decision to hire Colar for the position. They told the jury that "whatever those phone calls were, they made no difference

in the selection of the candidate." The district court cited evidence presented at trial that Colar was "hard-working and [had a] 'proven track record' of doing well in the warehouse" during his "approximately fifteen years experience as a 'warehouseman'" and that these were the reasons for his hiring. While the testimony of David Tate could be read to conclude that he was considering race in his vote, he also said he couldn't recall whether the upcoming election and the racial concerns surrounding it "affected his decision." The jury resolved the ambiguities in the witnesses' testimony in Pace's favor.

The LPSB implies that Pope's calls were too attenuated from the LPSB's vote to be imputed to them. Although the LPSB was the ultimate decisionmaker, "discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker acted as a rubber stamp, or the cat's paw, for the subordinate employee's prejudice." *Laxton v. GAP Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (internal quotation marks and citations omitted). The relevant inquiry is whether Pope "had influence or leverage over" the LPSB's decisionmaking. *See id.* The jury could have inferred that Pope had influence or leverage over the LPSB based on Pope's status as Superintendent and Pope's acts of calling board members to press his recommendation. *See, e.g., id.* (reversing judgment as a matter of law where there was evidence that a supervisor who made a discriminatory remark had influence over the individuals responsible for terminating the plaintiff); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 (5th Cir. 2000) (reversing judgment as a matter of law where there was evidence that a co-worker who made a discriminatory remark "wielded sufficiently great informal power" within the organization and over the decisionmakers). Pope's conduct provides circumstantial evidence that the LPSB may have been influenced by race. At the least, the jurors heard evidence that the Parish Superintendent, Pope, was calling board members and urging them to vote in favor of Colar because of

political concerns based on race. They also heard evidence that racial considerations were at play in the mind of one of the board members.

Again, while we may be sympathetic to the possibility that race was not a motivating factor in this selection, the jury's determination and the great deference we give to it guides our decision. We cannot say that "*no rational factfinder* could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148 (emphasis added). Likewise, we cannot say that "there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* The jury's inferences and ultimate conclusions cannot be said to be wholly unreasonable or irrational.

## CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings.