# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2021

Lyle W. Cayce
Clerk

No. 20-60456

TAWANA FRIEND,

*Plaintiff—Appellant*,

*versus*

CAROLYN MCADAMS, *Individually and in her Official Capacity as Mayor of the City of Greenwood, Mississippi*; RAY MOORE, *Individually and in his Official Capacity as Chief of Police of the City of Greenwood, Mississippi*; JOHNNY JENNINGS, LISA COOKSTON, RONNIE STEVENSON, CHARLES MCCOY, DOROTHY GLENN, DAVID JORDAN, CARL PALMER, *In their Official Capacities as Members of the City Council of Greenwood, Mississippi*; CITY OF GREENWOOD, MISSISSIPPI,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:19-CV-18

Before JOLLY, DUNCAN, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-60456

Tawana Friend was a police officer for the City of Greenwood, Mississippi. After she resigned, she sued the City and numerous officials, alleging she was passed over for promotions, subjected to a hostile work environment, and constructively discharged due to race and sex discrimination. The district court granted Defendants summary judgment. We AFFIRM.

## I.

Friend, a black woman, was hired by the Greenwood Police Department ("GPD") in 2013. During her tenure, she served on patrol, on the SWAT team, and in the juvenile division. Friend began seeking a promotion to the rank of sergeant in March 2015, when she first took the promotion exam. Though she passed, she was denied promotion because she lacked the requisite three years of experience with the GPD. Friend again took the exam in the fall of 2015 and again was denied a promotion. She does not dispute that at the time, she still lacked three years of job experience. On both occasions, other candidates were promoted.

In October 2016, while assigned to the juvenile division, Friend responded to an incident involving an eleven-year-old child who was causing a disturbance at a residence. Friend took the child into custody in the police annex across the street from GPD headquarters and whipped him with a belt at his grandmother's request. Jeri Bankston, a white female officer, was present during the incident but had no role in the corporal punishment. An internal affairs investigation concluded that Friend violated GPD policies, resulting in a temporary suspension without pay, a year of probation, and a

No. 20-60456

transfer back to the patrol division. Bankston was not disciplined in connection with the incident.[1]

Friend characterizes the GPD as infused with "pervasive and insidious racism and sexism." She recounts working under an abrasive captain who would not let her ride in his car and told her he did not want her in his office because she might steal something. Friend stated that she feared retaliation from Police Chief Raymond Moore if she talked to Mayor Carolyn McAdams about the work environment. Nonetheless, in the summer of 2017, Friend and others met with the mayor in an effort to explain high officer turnover rate. The parties dispute whether Friend brought up the alleged discriminatory promotion process.

In October 2017, Friend was involved in another incident that resulted in disciplinary action. Upon encountering her sister and her sister's boyfriend in an argument, Friend approached them with her personal weapon drawn. A subsequent internal affairs investigation determined she had again violated GPD policies and procedures.

Shortly thereafter, on January 16, 2018, Friend submitted a letter to the GPD human resources department alleging a grievance "for the treatment that [she had] received from Chief Raymond Moore." Two days later, she received a notice of intent to discipline in connection with the October off-duty incident involving a firearm. On January 23, she was terminated. Greenwood's Civil Service Commission ordered her reinstatement on March 12, however, after it found insufficient evidence warranting her termination. Soon after she was reinstated, Friend again attempted to apply for a promotion. She was unable to do so, however,

---

[1] Friend does not cite record support for this assertion. But Defendants proceed on the assumption that Bankston was not disciplined in relation to the incident.

No. 20-60456

because the promotion process was canceled in response to complaints that unqualified individuals were applying and being promoted. Friend submitted a letter of resignation on May 29, 2018.[2]

Friend filed suit in Mississippi state court against the City, Mayor McAdams and Chief Moore in their individual and official capacities, and various city council members in their official capacities (collectively, "Defendants"). She alleged race and sex discrimination in violation of Title VII and 42 U.S.C. § 1981; conspiracy under 42 U.S.C. §§ 1983, 1985, and 1986; and unlawful discharge under Mississippi state law. Defendants removed the suit to federal court and moved for summary judgment.

The district court granted Defendants' motion. It held that Friend had failed to establish a prima facie case of race discrimination for her failure-to-promote claim. It next considered her sex discrimination allegations, construing them to mean that "Chief Moore was allegedly staring at her body because she was female," and concluded that infrequent instances of staring were insufficient to establish a cognizable claim of sexual harassment. The court then turned to Friend's retaliation claim but declined to consider it because Friend had not supported her claim with any legal argument. Similarly, it deemed her §§ 1985 and 1986 claims conclusory and therefore waived. Finally, the court determined Friend had not established a viable wrongful discharge claim. Although Mississippi law allows an employee to sue in tort when she is discharged for reporting her employer's

---

[2] Prior to that, on March 7, 2018 (*i.e.*, between her termination and reinstatement) Friend had filed an Equal Employment Opportunity Commission complaint alleging race and sex discrimination, as well as retaliation. The complaint stated that Chief Moore treated "white law enforcement employees better than black law enforcement employees regarding promotions, discipline and job assignments" and that "Chief [Moore] would stare at [Friend.]" She received a right to sue letter.

No. 20-60456

illegal acts, the court explained that Friend had failed to show any illegal conduct by her employer or anyone else.

Friend appeals. She does not mention her §§ 1985 and 1986 claims, and we therefore deem them abandoned. *Canales v. Stephens*, 765 F.3d 551, 576 (5th Cir. 2014). Nor will we consider her retaliation claims, which were "not raised to such a degree that the district court ha[d] an opportunity to rule on [them]." *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 937 n.1 (5th Cir. 2019) (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)). We therefore focus on Friend's allegations that she was subjected to (1) unlawful discrimination related to her efforts to obtain a promotion and the disciplinary actions taken against her, and (2) a hostile work environment that forced her to resign. Our review of the summary judgment is *de novo*. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

## II.

### A. Failure to Promote

At the heart of Friend's claims is the allegation that she was unfairly denied a promotion on the basis of race and sex. Defendants object on numerous fronts. They maintain that Friend cannot bring a claim under Title VII because she failed to exhaust her administrative remedies, *see Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), and that she cannot bring a sex discrimination claim under § 1981 because that statute does not encompass sex discrimination, *see Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981). We conclude Friend's claims are unavailing for a more basic reason: she has failed to establish a viable claim of discrimination.

5

The familiar *McDonnell Douglas* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). As plaintiff, Friend initially carries the burden of establishing a prima facie case of discrimination. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). To do so, she must show that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was . . . treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). Only if Friend can demonstrate a prima facie case does the burden "shift[] to the employer to articulate some legitimate, nondiscriminatory reason" for its conduct. *Sanders*, 970 F.3d at 561 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer can do so, the burden shifts back to the plaintiff to show the proffered reason was pretextual. *Id.* at 562. Our analysis need not proceed past the first step, however, because Friend cannot make out a prima facie case.

It is undisputed that Friend did not have the requisite three years of experience at the GPD and was therefore unqualified for the promotion she sought. Absent a showing that she was qualified for the position—or, at the summary judgment stage, that there is a genuine issue of material fact on the question—Friend's claim cannot succeed. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 318 (5th Cir. 2004). To the extent Friend argues the entire hiring process was arbitrary, she must put forth evidence that others who were promoted also lacked the objective qualifications. *Johnson v. Louisiana*, 351 F.3d 616, 624 (5th Cir. 2003). In other words, as we explained in *Johnson*, employees may "show[] themselves to be qualified for the positions as measured by the standards applied to those actually hired." *Id.* at 625*; see also Smith v. City of St. Martinville*, 575 F. App'x 435, 439 (5th Cir. 2014) (per curiam) ("[W]here an employer declines to apply a particular

objective employment requirement equally, . . . a plaintiff's failure to meet that requirement does not render him 'unqualified.'"). If others who were promoted were not required to have three years' experience, Friend may be able to show she was "as qualified as" they were. *Johnson*, 351 F.3d at 625.

For the first time on appeal, Friend suggests that Steve Nobles—a white man who applied for a promotion in the fall of 2015 (around the same time of Friend's second promotion request)—was permitted to take the exam despite the fact that he was hired around the same time she was, implying the three years' experience requirement was not uniformly applied. "We will not consider assertions that were not raised in the district court." *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021). Furthermore, even if the argument were not forfeited, Friend's vague assertion is insufficient to raise a genuine dispute of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (explaining that "'resolv[ing] any factual issues of controversy in favor of the non-moving party'" is "a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint"); *see also Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) (requiring "nonmoving party to . . . designate specific facts showing that there is a genuine issue for trial" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, Friend has not met her burden to show the "objective requirements were not applied to the employees actually hired." *Johnson*, 351 F.3d at 625.

### B. Disparate Treatment in Disciplinary Actions

Friend also contends she was subject to disparate treatment with respect to disciplinary actions: Friend, a black woman, was harshly penalized for whipping a child, while Bankston, a white woman who was also present, faced no consequences. Friend cannot make out a prima facie case of discrimination, however, because she and Bankston were not

similarly-situated individuals. "[W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citation omitted). "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*

Here, Friend cannot show that Bankston is a proper comparator because their behavior during the corporal punishment incident was not "nearly identical." Friend's conduct—whipping a child with a belt—was meaningfully different than Bankston's—standing by while it happened. *See Zeng v. Tex. Tech Univ. Health Sci. Ctr.*, 836 F. App'x 203, 209–10 (5th Cir. 2020) (per curiam) (violations of hourly work reporting policies were not "nearly identical" when some employees improperly used access badges and another worked remotely from another state without authorization).

### C. Hostile Work Environment

Friend further contends she was subjected to a hostile work environment that was so "[]racially [and] sexually charged" that she was forced to resign. As we have explained,

> To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."

*West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (per curiam) (citation omitted).

As Friend views it, Chief Moore's treatment of her created a hostile environment so severe it "affected a term, condition, or privilege of employment." *See ibid.* In support of this argument, she marshals the following allegations: Chief Moore assigned her to work under a captain who did not like black people; screamed at her; did not name her to her preferred position or team; refused to meet with her; stated she would not be around much longer after she was reinstated; directed her shift sergeant to write up "any little thing that [she] did"; became upset when her name was mentioned; and required her to dismiss tickets issued to white people. Friend also maintains that Chief Moore "stared at her" on multiple occasions.

The alleged behavior does not rise to the level of a Title VII violation. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 741–42. "In determining whether an employee's work environment was objectively offensive, we consider the totality of the circumstances, including '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with the employee's work performance.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020) (citation omitted). The standard is not easy to meet. Rather, these "factors are sufficiently demanding to ensure that Title VII does not become a general civility code." *West*, 960 F.3d at 742 (citation omitted) (cleaned up). "[N]ot all harassment, including 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)'" is actionable. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (citation omitted). The conduct Friend describes, while unpleasant, does not demonstrate the GPD was "permeated with discriminatory intimidation, ridicule, and insult." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (citation omitted).

And even if the alleged harassment rose to the level of a hostile work environment, Friend has not put forth any evidence suggesting these actions were "based on" her race and sex. *See West*, 960 F.3d at 741. "[B]esides her own subjective belief that [Moore]'s actions were based on . . . animus, [Friend] has presented no competent summary judgment evidence that [Moore]'s alleged bullying was motivated by her [race or sex]." *Badgerow*, 974 F.3d at 618. Accordingly, Friend's hostile work environment and constructive discharge claims cannot succeed.

### D. State Law Claim

Finally, we address Friend's state law wrongful discharge claim. Mississippi follows an employment at-will doctrine but permits two public-policy exceptions, one of which allows "an employee who is discharged for reporting illegal acts of his employer" to "bring[] [an] action in tort for damages against his employer." *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603, 607 (Miss. 1993). Friend maintains she was terminated for reporting unlawful discrimination and that Captain Moore's alleged violations of federal law constitute "illegal acts." In other words, Friend's *McArn* claim rises or falls with her federal claims. Because her federal claims cannot survive summary judgment, the district court properly granted summary judgment as to her *McArn* claim as well.

### III.

The district court's judgment is AFFIRMED.