

# NUMBER 13-14-00113-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION AND
THE TEXAS DEPARTMENT OF
AGING AND DISABILITY SERVICES,                      Appellants,

v.

JOSE P. BALDONADO,                                        Appellee.

### On appeal from the 445th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Opinion by Justice Perkes

Appellants Texas Health and Human Services Commission ("HHSC") and Texas

Department of Aging and Disability Services ("DADS")[1] bring this interlocutory appeal challenging the trial court's order denying its plea to the jurisdiction in a suit brought by appellee Jose P. Baldonado ("Baldonado").[2]  Appellants' appeal presents one point of error with three sub-issues.   Appellants assert that the trial court lacked subject matter jurisdiction over Baldonado's employment discrimination claims raised under the Texas Commission on Human Rights Act ("TCHRA") because Baldonado:   (1) failed to establish a prima facie case of age discrimination against HHSC; (2) failed to establish a prima facie case of retaliation against DADS; and (3) failed to exhaust administrative remedies as to his retaliation claim against DADS.   We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Baldonado applied for a Clerk II position with HHSC.   This was an entry level position requiring a high school diploma or GED.[3]   The job description described the position as primarily providing clerical support services (i.e. proofreading documents and maintaining files) and identified internet usage and knowledge of computers as required skills.   The initial screening criteria included:   education that would indicate a general understanding of the knowledge, skills, and abilities needed to do the job; experience using a personal computer for inquiry and data entry; and experience using fax machines, printers, multi-line phones, and other office equipment.

---

[1] DADS is a state agency within HHSC. *See* TEX. GOV'T CODE ANN. §§ 531.001(4)(A), 531.002(a) (West, Westlaw through 2013 3d C.S.).

[2] Texas Civil Practice and Remedies Code section 51.014(a)(8) provides a right of interlocutory appeal from a district court's order that "grants or denies a plea to the jurisdiction by a governmental unit." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West, Westlaw through 2013 3d C.S.).

[3] There was no Clerk I position at the time the Clerk II vacancy was posted.

In his application, Baldonado provided that he received a bachelor of science degree in bilingual education and government from the University of Texas and indicated the following special training, skills, and qualifications: (1) eight years of teaching experience; (2) clerical work; (3) case management; (4) public relations; (5) information gathering; (6) supervisory experience; (7) counseling; (8) dual language instruction; and (9) the ability to type forty-five words per minute. By way of work history, Baldonado identified experience taking and addressing customer phone calls, resolving client concerns, updating customer files, information gathering, interviewing clients, and case management. HHSC did not select Baldonado for an interview out of the fifty-eight applicants for the Clerk II position.

Nelda Ogdee ("Ogdee"), the HHSC hiring authority for the Clerk II position, was responsible for screening applications and selecting applicants for interviews. In her deposition testimony, Ogdee explained that she reviews an applicant's prior work experience to assess how long an applicant has remained at a prior job and whether the work history is relevant to the current position. Ogdee agreed that Baldonado's application reflected experience and skills consistent with the job description for Clerk II. Nicole Dunaway, a vocational expert retained by appellants, prepared an expert report in which she reviewed Baldonado's education and work history to determine his employability. In her deposition testimony, she stated that Baldonado would be qualified for a customer service clerk position, which she explained was similar to the Clerk II position.

After learning he was not selected to interview for the Clerk II position, Baldonado filed a complaint with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC") alleging that HHSC failed to hire him because of his age in violation of the Age Discrimination in Employment Act of 1967, as amended.[4]

On February 11, 2008, Baldonado was interviewed by DADS for the position of Community Care Worker I. Supervisors Jose Meza ("Meza") and Theresa Castaneda ("Castaneda") were present at the interview. At the conclusion of the interview, Meza offered Baldonado the Community Care Worker I position. Baldonado then disclosed that he had a "case" or "grievance" against HHSC. Meza responded "It doesn't matter, Mr. Baldonado. You're hired."

Baldonado began his employment under the direct supervision of Castaneda. On or about March 10, Baldonado again told Castaneda that he had "filed a complaint." Castaneda also learned that Baldonado, on several occasions, told a co-worker that he "was going to file a complaint." Castaneda shared this report with her supervisor Sylvia Vela ("Vela"). Baldonado disclosed to another co-worker that he filed a complaint because "he had applied for several positions with the state but he was never called for an interview."

On March 17, Castaneda held a conference with Baldonado to admonish him for working outside of assigned hours and for taking confidential client files home. On March

_____

[4] At that time, Baldonado also alleged that HHSC did not hire him for two other positions due to his age. Baldonado's counsel has since clarified that he is only bringing a claim against HHSC relating to the failure to hire him for the Clerk II position.

4

19, Castaneda submitted to Vela a recommendation for termination of Baldonado's employment. Vela approved the recommendation on March 24, but Castaneda decided to allow Baldonado further opportunity to meet her expectations. Between March 25 and April 22, Castaneda held four additional conferences with Baldonado to address work-related concerns. On April 25, 2008, DADS terminated Baldonado's employment, notifying him in writing that he was being dismissed "due to a determination that [he was] not suited for [his] assigned position."

Following his termination, Baldonado filed a second TWC complaint alleging that he was "discharged because [he] filed a previous charge of discrimination." Baldonado received separate notices from the TWC advising him of his right to bring a civil action in relation to his first and second complaints. Baldonado brought suit against HHSC asserting claims of discrimination and retaliation. He amended his petition to include DADS as an additional defendant.

On October 18, 2010, appellants filed a combined motion for summary judgment and plea to the jurisdiction, arguing, in relevant part, that Baldonado failed to file and serve his lawsuit within the sixty-day period prescribed by law. The trial court entered a final order granting appellants' plea to the jurisdiction. Following an interlocutory appeal to this Court, we reversed the trial court's order, concluding that "service of citation within the 60-day filing period in section 21.254 is not an act that can be performed prior to filing suit and is therefore not a 'prerequisite' to filing suit and is not a jurisdictional requirement for purposes of section 311.034 of the Government Code." *Baldonado v. Tex. Dep't of Health & Human Servs. Comm'n,* No. 13-11-00167-CV, slip op. at 7–8 (Tex. App.—

5

Corpus Christi Aug. 27, 2012, pet. denied) (mem. op.).[5] We remanded the case to the trial court for consideration of the alternative grounds for dismissal asserted in appellants' plea to the jurisdiction. *Id.* The trial court denied appellants' combined motion for summary judgment and plea to the jurisdiction, and this interlocutory appeal followed.[6]

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* "Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit. As a result, immunity is properly asserted in a plea to the jurisdiction." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion." *Id.* at 635. The trial court must take as true all evidence favorable to the nonmovant,

---

[5] The opinion is available at http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID= b8a09d6a-00cb-4105-a040-40f67735ff5&coa=coa13&DT=Opinion&MediaID=1031c375-7955-4584-b6f0-f72c73ee5398.

[6] Only the trial court's denial of appellants' plea to the jurisdiction is subject to this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing right of interlocutory appeal from district court's order that "grants or denies *plea to jurisdiction* by governmental unit.") (emphasis added).

6

indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If there is a fact question regarding the jurisdictional issue, the trial court must deny the plea. *Id.* at 227–28. However, if the evidence is undisputed or if the plaintiff failed to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## III. APPLICABLE LAW

The TCHRA provides a limited waiver of sovereign immunity for employment discrimination claims. TEX. LAB. CODE ANN. § 21.254 (West, Westlaw through 2013 3d C.S.); *Garcia*, 372 S.W.3d at 637. An employer commits an unlawful employment practice "if because of race, color, disability, religion, sex, national origin, or age the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" *Id.* § 21.051(1). The TCHRA prohibits "retaliat[ion] or discriminat[ion] against a person who . . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." *Id.* § 21.055.

One of the purposes of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964; therefore, analogous federal statutes and interpretative cases guide our reading of the TCHRA. *Garcia*, 372 S.W.3d at 633-34.

A plaintiff may prove a claim of intentional discrimination by either direct or circumstantial evidence. *Id.* at 634. Where there is no direct evidence of discrimination,

7

we apply the modified burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff is entitled to a presumption of discrimination if he meets an initial burden of establishing a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634; *see McCoy v. Tex. Instruments, Inc.,* 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.) (noting retaliation claims use "[t]he same burden-shifting analysis" as discrimination claims). In claims brought under the TCHRA, a plaintiff must demonstrate a prima facie case of discrimination to invoke that statute's limited waiver of sovereign immunity. *Id.* at 637. Therefore, the prima facie elements of a discrimination claim are jurisdictional facts properly challenged in a plea to the jurisdiction.[7] *Id.* A plaintiff need only raise a fact issue as to the challenged prima facie element to survive a plea to the jurisdiction. *Id.* at 635. Additionally, the question of whether a plaintiff exhausted administrative remedies under the TCHRA is a jurisdictional issue that may be raised in a plea to the jurisdiction. *Lopez v. Tex. State Univ.,* 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied).

## IV. ANALYSIS

### A. Age Discrimination

Appellants first argue that Baldonado failed to establish a prima facie case of age discrimination. Specifically, appellants maintain that Baldonado did not show he was qualified for the Clerk II position, because his employment application fails to demonstrate

---

[7] If a plaintiff establishes a prima facie case and survives a plea to the jurisdiction, the burden would then shift to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing. *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The burden then shifts back to the complainant to show that the employer's stated reason was a pretext for discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 805–07; *Burdine,* 450 U.S. at 256.

8

experience using a personal computer and other office equipment; skills required for the position.   We disagree.

To establish a prima facie case of age discrimination, the plaintiff must show that: (1) he was a member of a protected class (age forty or older); (2) he sought and was qualified for an available employment position; (3) he was not selected for the position; and (4) the employer selected someone younger.   *Garcia.* 372 S.W.3d at 642.   As to the second element, "[a]n employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.'" *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003).   Therefore, an employee must demonstrate that he meets objective hiring criteria to establish his prima facie case. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001).[8]   An employee may overcome a lack of objective qualifications at the prima facie stage if he can demonstrate that the objective requirements were not applied to the employee(s) actually hired. *Johnson*, 351 F.3d at 624–25.

A plaintiff in Baldonado's position is not required to marshal evidence and prove his claim to survive a plea to the jurisdiction.   *See Garcia*, 372 S.W.3d at 637.   Even when a plaintiff is required to submit evidence demonstrating a jurisdictional fact, his burden of proof must not involve significant inquiry into the substance of the claims.   *Id.* at 637–38.   For instance, we need not decide at this stage whether HHSC can articulate a legitimate, nondiscriminatory reason for Baldonado's rejection or whether there is

---

[8] An employer may only rely on objective requirements to show an employee is not qualified. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). An employer may not rely on wholly subjective standards and then plead lack of qualification when its hiring process is challenged as discriminatory. *Id.*

9

evidence that the stated reason was a pretext for discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 805–07. Rather, our inquiry is limited to determining whether a fact question exists regarding the prima facie elements of Baldonado's discrimination claim.

Clerk II is an entry level clerical position. Viewed in comparison with the Clerk II job description, Baldonado's application illustrated the following work experience: clerical work; file maintenance; case management; typing skills; and use of the phone to address customer concerns. In her deposition testimony, HHSC's hiring authority agreed that Baldonado's application reflected experience and skills consistent with the job description for Clerk II. Further, appellants' vocational expert testified that Baldonado was qualified for the similar position of customer service clerk.

This evidence is sufficient to create a fact question as to Baldonado's prima facie case of age discrimination. If a fact question exists regarding the jurisdictional issue, the trial court must deny a plea to the jurisdiction. *Garcia*, 372 S.W.2d at 635.

## B. Retaliation

Next, appellants maintain that Baldonado failed to establish a prima facie case of retaliation regarding his termination. Specifically, appellants argue that Baldonado failed to demonstrate a causal link between his charge of discrimination against HHSC and his later termination by DADS. We disagree.

To establish a prima facie case of retaliation, the plaintiff must show: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Dias v.*

*Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 487 (5th Cir. 2004)). The causal link required by the third prong does not rise to the level of a "but for" standard at the prima facie stage.[9]  *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002); *see also Montalvo v. County of Refugio,* No. 13-08-00003-CV, 2010 WL 1731651, at *2 (Tex. App.—Corpus Christi Apr. 29, 2010, no pet.) (mem. op.).  To establish causation, the employee must first demonstrate the employer's knowledge of the protected activity. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).  Temporal proximity alone can, in some instances, establish the prima facie causation element. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  "[C]ases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Baldonado's disclosure to his supervisors that he had a "complaint" or "grievance" against HHSC is sufficient to raise a fact issue regarding whether his employer had knowledge of his protected activity.  As discussed previously, our inquiry here is limited to determining whether a fact issue exists regarding the prima facie elements of Baldonado's retaliation claim.  Baldonado relies primarily on the temporal proximity of his disclosure to Castaneda of a "complaint" against HHSC and his termination to support

---

[9] The Supreme Court of the United States recently held that a plaintiff must ultimately prove a Title VII retaliation claim "according to traditional principles of but-for causation."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).   However, the requirement of showing "causation . . . at the prima facie stage is much less stringent than a 'but for' standard[.]"  *Montemayor v. City of San Antonio,* 276 F.3d 687, 692 (5th Cir. 2001).

his prima facie case. He also cites the temporal proximity of his March 10 conversation with Castaneda and the job-related concerns that followed. Baldonado was terminated approximately two and a half months after he disclosed that he filed a complaint. In those two and a half months, Castaneda held five conferences with Baldonado to address work-related concerns.

Given the relaxed causation standard required to establish a prima facie case of retaliation, we conclude the temporal proximity of Baldonado's disclosure of his complaint against HHSC and his termination is sufficient to create a fact question as to causation. *See, e.g.*, *Wooten v. McDonald Transit Assoc's, Inc.*, 775 F.3d 689, 697 (5th Cir. 2015) (finding sufficient causal connection was established where adverse treatment began within two months of filing of plaintiff's EEOC complaint); *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368 (5th Cir. 2013) (concluding temporal proximity of three months between filing of EEOC charge and adverse employment action in addition to gradual changes in plaintiff's job duties was sufficient to establish causation element).

Because a fact question exists on the causation element, the trial court properly denied appellants' plea to the jurisdiction on this ground. *See Garcia*, 372 S.W.2d at 635.

## C. Exhaustion of Administrative Remedies

Appellants lastly argue that Baldonado failed to exhaust administrative remedies regarding his claim against DADS. Appellants maintain that because Baldonado

identified HHSC and not DADS as the respondent in his second TWC complaint, he has not timely filed a charge of discrimination as to DADS.   We disagree.

"The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices."   *Lopez,* 368 S.W.3d at 701.   Before bringing a suit under the TCHRA, a plaintiff must file an administrative complaint "not later than the 180th day after the date the alleged unlawful employment practice occurred."   TEX. LAB. CODE ANN. § 21.202.   Texas Labor Code section 21.201 requires that the complaint state "facts sufficient to enable the commission to identify the respondent."   *Id.* § 21.201(c)(3). This requirement enables the TWC to serve the respondent with a copy of the complaint. *Id.* § 21.201(d).   We construe an administrative charge of discrimination liberally in the complaining party's favor.   *See Ramirez v. DRC Distributors, Ltd.*, 216 S.W.3d 917, 922 (Tex. App.—Corpus Christi 2007, pet. denied); *Price v. Sw. Bell Tel. Co.* 687 F.2d 74, 78 (5th Cir. 1982) ("[c]onsistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading.").

DADS is named as a state agency within HHSC by Texas statute.   *See* TEX. GOV'T CODE ANN. §§ 531.001(4)(A), 531.002(a) (West, Westlaw through 2013 3d C.S.). Baldonado's intake questionnaire, submitted just prior to his second TWC complaint, identifies DADS as his employer.[10]   HHSC submitted a position statement on behalf of DADS responding to the second complaint.   In that statement, HHSC explains that "[t]he

---

[10] *See Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280–81 (5th Cir.1994) (looking beyond the plaintiff's charge, the court relied, in part, on an affidavit and questionnaire to determine that the plaintiff's disparate treatment claim was like or related to her sexual harassment and retaliation claims).

Health and Human Services Commission's Civil Rights Office (CRO) on behalf of the Department of Aging and Disability Services (DADS) submits the following information[.]" The response provides information and documents submitted by DADS personnel.

The purpose for requiring a complaint to identify the respondent is so the respondent can receive notice of the charge. TEX. LAB. CODE ANN. § 21.201(d). DADS, a state agency within HHSC, responded fully to the charge by and through HHSC's civil rights office, and participated in the investigation. Accordingly, we conclude that Baldonado's timely filed charge of discrimination provided "facts sufficient to enable the commission to identify the respondent", *Id.* § 21.201(c)(3), and that Baldonado exhausted his administrative remedies as to his claim of retaliation against DADS. *Cf. Overstreet v. Underwood*, 300 S.W.3d 905, 909 (Tex. App.—Amarillo 2009, pet. denied) (explaining that although complaint did not designate district judge as employer, complaint presented sufficient facts to identify him as a respondent); *Ramirez*, 216 S.W.3d at 923 (holding that plaintiffs complied with section 21.201(c)(3) where they provided enough facts for the TWC to identify the respondent).

## D. Summary

Having addressed each of appellants' sub-issues, we overrule their point of error.

## V. CONCLUSION

We affirm the trial court's order denying appellants' plea to the jurisdiction.

GREGORY T. PERKES
Justice

Delivered and filed the
30th day of April, 2015.

14